**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **GARY S. TURNER,** | : | |
| *Plaintiff* | : | |
| v. | : | C.A. No. 19-cv- |
| | : | |
| **TEKNOR APEX COMPANY, alias,** | : | |
| *Defendant* | : | |

**COMPLAINT**

### I.   Introductory Statement

1. This action is brought by Plaintiff Gary S. Turner ("Plaintiff") against his former employer, Teknor Apex Company, alias, ("Defendant") seeking compensatory, liquidated, and punitive damages, civil penalties, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. and the Rhode Island Whistleblower Protection Act ("Act"), R.I. Gen. Laws § 28-50-1, *et seq*.

### II.   Parties

2. Plaintiff Gary S. Turner is a resident of the Town of Cumberland, County of Providence and State of Rhode Island.

3. Defendant Teknor Apex Company, alias, is a Foreign Corporation duly registered under the laws of the State of Rhode Island, which is doing business in the State of Rhode Island, with a principal place of business located at 505 Central Avenue, Pawtucket, Rhode Island, 02861.

### III.   Jurisdiction

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201 and 2202.

### IV.   Venue

5. Venue is proper in this Court insofar as, on information and belief, Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set

forth in 28 U.S.C. § 1391. Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

## V. Material Facts

6. At all relevant times, Defendant was a manufacturer of plastics and TPE products, operating a plant in Pawtucket, Rhode Island.

### *Plaintiff's Whistleblower Protected Conduct*

7. At all relevant times, Plaintiff worked out of Defendant's place of business located at 505 Central Avenue, Pawtucket, Rhode Island, 02861.

8. As a large manufacturing plant, Defendant frequently requires maintenance of its facilities that requires employees to perform maintenance work at heights of six feet or more above lower levels, requiring fall protection systems and plans.

9. As part of his job duties, Plaintiff is sometimes required to perform maintenance at heights that would require fall protection systems and plans.

10. At times, Defendant hires contractors to perform maintenance work at its Pawtucket plant that includes maintenance work performed at heights of six feet or more above lower levels, requiring fall protection systems and plans.

11. As of July 18, 2019, Defendant did not have a fall protection plan or rescue plan in place for the maintenance work performed at its plant as was required by OSHA.

12. On or about July 18, 2019, Plaintiff was attending an informative leadership meeting with several of Defendant's managers and team leaders including Defendant's Plant Manager, Mark Piemonte ("Mr. Piemonte"), Defendant's Human Resources Manager, Kimberly Whitaker ("Ms. Whitaker"), and Defendant's Environmental Health and Safety Manager, Justin Joliffe ("Mr. Joliffe").

13. During that meeting, Mr. Piemonte informed the attendants that they were now

responsible for doing pre-work safety permits on outside contractors.

14. Such permits would require an evaluation of safety requirements, including whether and what personal protective equipment is required, whether a fall protection plan is needed for the particular work, and to document any lift and fall rescue plans that are necessary.

15. Plaintiff was informed that he would be responsible for drafting any fall rescue plans required by the permits.

16. In response, Plaintiff raised numerous safety concerns, including that OSHA and ANSI require such plans to be created by a "qualified" person on behalf of the "employer" who is performing the work.

17. Specifically, Plaintiff complained to the Defendant that he was not qualified to draft fall rescue plans for maintenance work at heights.

18. Plaintiff also complained to the Defendant that Defendant did not employ the employees of outside contractors, and therefore it would not comply with OSHA requirements for him to develop safety protection and rescue plans applicable to outside contactor employees

19. In response to Plaintiff's concerns, Mr. Piemonte told Plaintiff that Defendant had adopted this new policy and that he was required to follow it.

20. Following the meeting, Defendant's Maintenance Manager and Plaintiff's immediate supervisor, Rick Gaouette ("Mr. Gaouette") told Plaintiff that he had to meet with Mr. Piemonte.

21. Plaintiff, Mr. Gaouette, and Mr. Piemonte met in Mr. Piemonte's office, wherein Plaintiff was told that they were there to discuss his attitude in the leadership meeting.

22. A few weeks prior, Plaintiff had taken a mandatory Teknor Apex Fall Protection Safety CBT Training, wherein he learned about the OSHA requirements and ANSI Standards for complying with OSHA, which he believed were not being followed by Defendant's new policy.

23. Mr. Piemonte told Plaintiff that he was being negative and argumentative and he did not agree with Plaintiff about his interpretation of the ANSI Standards.

24. Plaintiff tried to explain his understanding of the requirements from the CBT Training he attended, but Mr. Piemonte just said "well I guess we are done here," and dismissed Plaintiff from his office.

25. On July 23rd, Plaintiff sent an email to Mr. Piemonte again explaining his concerns about why he thought Defendant was not in compliance with OSHA's rescue plan requirements, including screen shots from his CBT Training.

26. In response to Plaintiff's email, Mr. Joliffe, Defendant's Environmental Health and Safety Manager, sent Plaintiff an email asking if Plaintiff could explain what his safety concerns were.

27. The next day, July 24th, Plaintiff met with Mr. Joliffe to explain his concerns with the new policy.

28. Plaintiff thoroughly explained his hesitations, including that OSHA requires Defendant to evaluate its own fall protection hazards for all maintenance and construction work that its own employees perform, and that that should be performed either by Mr. Joliffe, as the safety manager, or he should hire an expert to perform that work on behalf of Defendant, as Plaintiff did not believe he was a "qualified" person as required by applicable OSHA requirements.

29. Plaintiff additionally explained that as part of a rescue plan, Defendant is required to assign a rescue team who has been trained and notified before any high work begins.

30. Finally, Plaintiff explained to Mr. Joliffe that he was very concerned because he did not believe he was qualified to develop such plans and, if he prepared a rescue plan that was inadequate, it could directly put himself and his professional license at risk.

*Retaliatory Employment Action*

31. The following day, July 25th, Plaintiff was met outside his office by Mr. Gaouette and told that they needed to talk.

32. Plaintiff and Mr. Gaouette were followed into Plaintiff's office by Ms. Whitaker.

33. Ms. Whitaker said, "It is clear that you are unhappy with your current position. We think we need to do a mutual separation."

34. When Plaintiff responded, "So what does that mean?" Ms. Whitaker said, "We are letting you go."

35. Ms. Whitaker then handed Plaintiff several documents, including a severance agreement that she expected Plaintiff to sign then and there.

36. Plaintiff informed Ms. Whitaker that he had to take the documents home to review them before he could sign them.

37. Plaintiff thanked them for the opportunity and their professionalism and then asked Ms. Whitaker to get him a glass of water.

38. When Ms. Whitaker left the room, Plaintiff asked Mr. Gaouette why he was being terminated and Mr. Gaouette said it was coming from Mr. Piemonte.

39. Mr. Gaouette said that Plaintiff was a very good employee, that he tried to get Mr. Piemonte to only give Plaintiff a suspension, but Mr. Piemonte would not agree.

40. Mr. Gaouette provided Plaintiff a letter of recommendation following his termination.

*Whistleblower Act Violation*

41. The Rhode Island Whistleblowers' Protection Act prohibits an employer from taking adverse employment action against an employee "[b]ecause the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in

writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the law of this state, a political subdivision of this state, or the United States, unless the employee knows or has reason to know that the report is false[.]" R.I. Gen. Laws § 28-50-3(1).

42. In addition, the Rhode Island Whistleblowers' Protection Act also prohibits an employer from taking adverse action against an employee "[b]ecause an employee refuses to violate or assist in violating federal, state or local law, rule, or regulation[.]" R.I. Gen. Laws § 28-50-3(3).

43. The Rhode Island Whistleblowers' Protection Act also prohibits an employer from taking adverse action against an employee "[b]ecause the employee reports verbally or in writing to the employer or to the employee's supervisor a violation, which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation or rule promulgated under the laws of this state, a political subdivision of this state, or the United States […]." R.I. Gen. Laws § 28-50-3(4).

44. As described above, Plaintiff experienced adverse employment action immediately after his complaints over Defendant's OSHA violations.

45. Defendant took adverse employment action against Plaintiff, in whole or in part, in retaliation for exercising her rights pursuant to the Act.

46. Defendant's wrongful and/or unlawful acts and/or omissions, including, but not limited to, those described herein, are in violation of the Act and were motivated by malice or ill will toward Plaintiff, and Defendant otherwise acted in bad-faith and/or with reckless indifference to the statutorily protected rights of Plaintiff.

*Defendants Failed to Compensate Plaintiff for All Hours Worked and Overtime Based at Time and One-half of Plaintiff's Regular Rate*

47. At all relevant times, Defendant conducted business in the State of Rhode Island through owning and/or operating a manufacturing plant located at 505 Central Avenue, Pawtucket, Rhode Island, 02861.

48. At all relevant times, Plaintiff was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), in his capacity as Lead Electrician employed by Defendant.

49. At all relevant times, Defendant was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

50. On or about May 20, 2013, Defendant hired Plaintiff to work at its Pawtucket plant as an electrician.

51. Since December 4, 2015, Plaintiff has been required to be on call at all times that he is not at work, twenty-four (24) hours per day and seven (7) days per week, even during his vacation time.

52. While on-call, Plaintiff was subject to significant restrictions, including that he must have a phone with him at all times and be able to respond on the phone immediately to any call and if he could not resolve the issue on the phone, he must be able to report to the plant within thirty (30) minutes.

53. Accordingly, he had to refrain from consuming alcoholic beverages at all times, be in pants and steel toed shoes—or be able to dress into them quickly—and still be at the plant within thirty (30) minutes.

54. On average, Plaintiff received on-call requests at least three (3) times per week, usually over the phone, although, going back two or more years, he was required to physically report to the plant two to three times per week.

55. Plaintiff was paid the equivalent of four (4) hours pay or $155.24 to compensate for all non-report on-call time.

56. If Plaintiff was required to report during on-call time, he was paid overtime for those hours worked.

57. Plaintiff was also paid overtime for hours worked over eight (8) hours per day.

58. However, Plaintiff's overtime compensation failed to include his weekly on-call payment in the calculation of his regular rate for overtime purposes.

59. Plaintiffs overtime rate of time and one-half is calculated strictly based on his regular, straight time hourly rate of $38.81 per hour.

60. The weekly on call pay of $155.24 should have been included in calculating his regular hourly rate for overtime purposes.

61. Defendant willfully and repeatedly violated the FLSA as well as the RIPWA by failing to pay Plaintiff the regular rate at which he was employed for each hour he worked, but no less than minimum wage.[1]

### *Failure to Pay Wages for All Hours Worked*

62. In interpreting the FLSA, the United States Supreme Court has long held that waiting time, standby time, and on-call time may be compensable under certain circumstances.

---

[1] 29 C.F.R. § 778.113(a)(when salaried employee has fixed workweek less that forty (40) hours, *she is entitled to her hourly equivalent for all additional hours worked up until forty hours* (not minimum wage) and time and one half for every hour worked above hour forty); *see Sobczak v. AWL Indus., Inc.,* 540 F. Supp. 2d 354, 359, 360 (E.D.N.Y. 2007) (FLSA can only increase, not decrease, amounts to which employees are contractually entitled; "the Supreme Court has determined that it is 'the hourly rate *actually paid* the employee for the normal, non-overtime workweek for which he is employed [that is relevant].' " (Quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)); *see also,* 29 U.S.C.A. § 218  ("No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter"); 29 C.F.R. § 778.5 ("Where a higher minimum wage than that set in the Fair Labor Standards Act is applicable to an employee . . ., the regular rate of the employee, as the term is used in the Fair Labor Standards Act, cannot be lower than such applicable minimum, for the words "regular rate at which he is employed" as used in section 7 must be construed to mean the regular rate at which he is lawfully employed.").

*See, e.g., Skidmore v. Swift & Co.*, 323 U.S. 134, (1944); *Armour & Co. v. Wantock,* 323 U.S. 126 (1944).

63. The relevant inquiry is whether an employee is "engaged to wait" or "wait[ing] to be engaged." *Skidmore,* 323 U.S. at 137.

64. Throughout his employment with Defendant, Plaintiff regularly worked hours "on call," that was time spent "engaged to wait," for which he received no compensation.

65. Despite the fact that Plaintiff was a non-exempt employee, Defendant failed or refused to pay Plaintiff compensation for all hours worked in a given workweek as required by the FLSA and the RIPWA.

66. Defendant willfully and repeatedly violated the FLSA as well as the RIPWA by failing to pay Plaintiff wages for all hours worked.

*Failure to Pay Overtime Wages*

67. Throughout his employment with Defendant, Plaintiff regularly worked more than forty (40) hours each workweek, including "on call" time.

68. Despite the fact that Plaintiff was a non-exempt employee, Defendant failed or refused to pay Plaintiff overtime pay as required by the FLSA and the RIPWA.

69. Defendant willfully and repeatedly violated the FLSA as well as the RIPWA by employing Plaintiff for more than forty (40) hours per workweek without compensating him at a rate not less than one and one-half (1 ½) times the regular rate at which he was employed.

*Work Suffered or Permitted*

70. Defendant is liable for the payment of compensation for all hours worked, including all "on call" hours, and overtime wages for all hours over forty (40) that Plaintiff was "suffered or permitted to work" in any one workweek—regardless of whether the work was

requested, authorized, or needed—whenever Defendant knew or had constructive knowledge that the work was being performed.

71. Defendant knew or had reason to believe that Plaintiff was performing work and overtime work for which he was not being compensated.

72. Moreover, Defendant knew or had reason to believe that Plaintiff was working in excess of forty (40) hours per week on a regular basis.

73. Accordingly, Defendant had constructive, if not actual, knowledge that Plaintiff regularly performed work and overtime work for which he was not compensated.

74. Nevertheless, Defendant failed or refused to pay Plaintiff the compensation to which he were legally entitled for all hours and overtime hours worked calculated based on his regular rate of pay.

75. As a proximate result of Defendant's wrongful, intentional, unlawful, discriminatory, and/or retaliatory acts and/or omissions, including, but not limited to those described herein, Plaintiff suffered, is now suffering, and will continue to suffer emotional and economic injury including, but not limited to, pecuniary losses, loss of income, failure to pay wages, loss of front and back pay, loss of employment benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, damage to his professional and personal reputation, and has incurred and will continue to incur expenses for legal services, and other great harm.

### I. Claims for Relief

76. Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 75 above.

### Count One
*Rhode Island Whistleblower Protection Act,*
*R.I. Gen. Laws § 28-50-1, et seq.*

77. Defendant, by its individual and/or concerted acts or omissions, including, but not limited to those described herein, engaged in unlawful retaliation against Plaintiff in violation of the Act, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under the Act.

### Count Two
*Federal Labor Standards Act*
*29 U.S.C. § 201, et seq.*

78. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the FLSA by failing to pay Plaintiff for all hours worked and for all overtime hours worked, calculated at time and one-half his regular rate as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which he is entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Three
*Rhode Island Minimum Wage Act,*
*R.I. Gen. Laws § 28-12-1, et seq. and R.I. Gen. Laws § 28-14-1, et seq.*

79. Defendant, by its acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by failing to pay Plaintiff for all hours worked and all overtime worked , calculated at time and one-half of his regular rate as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2.

### VII.   Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendants, including, but not limited to those complained of herein, are in violation of the Act , the FLSA and the RIPWA.

2. An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of all unpaid wages.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

7. An award of liquidated damages in an amount two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

8. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

9. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2.

10. Imposition of a civil penalty against Defendants pursuant to R.I. Gen. Laws § 28-14-19.1.

11. An award of other appropriate equitable relief pursuant to 29 U.S.C. § 216(b).

12. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

13. An award of such other and further relief as this Honorable Court deems just and proper.

### VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

### IX. Designation of Trial Counsel

Plaintiff hereby designates Richard A. Sinapi, Esquire, as trial counsel.

Plaintiff,
By her attorneys,
**SINAPI LAW ASSOCIATES, LTD.**

Date: November 15, 2019  /s/ **Richard A. Sinapi**
**Richard A. Sinapi, Esq.  (#2977)**
2374 Post Road, Suite 201
Warwick, RI 02886
Phone:  (401) 739-9690
FAX:  (401) 739-9040
ras@sinapilaw.com